Nicholas F. CAMPANALI,
Plaintiff/Appellant,

v.

Suzanne Loventhal CAMPANALI,
Defendant/Appellee.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

May 8, 1985.

Permission to Appeal Denied by
Supreme Court Aug. 12, 1985.

Fred C. Dance, Dance & Lincoln, Nashville, for plaintiff/appellant.

Jenks L. Hackney, Jr., Nashville, for defendant/appellee.

## OPINION

KOCH, Judge.

After fifteen years of marriage, Suzanne Loventhal Campanali was awarded a bed and board divorce from Nicholas F. Campanali on June 26, 1981, by the Third Circuit Court for Davidson County. Thereafter, on May 10, 1984, Mr. Campanali filed a complaint pursuant to Tenn.Code Ann. § 36-4-102(b) requesting that his wife be granted an absolute divorce.[1] The trial court entered a final decree on May 24, 1984, granting Mrs. Campanali an absolute divorce. In this decree, the trial court awarded the custody of one of the parties' two minor children to Mrs. Campanali and directed Mr. Campanali to pay Mrs. Campanali $183 per month for child support. The trial court also awarded Mrs. Campanali $200 per month in alimony *in futuro*. Mr. Campanali has perfected this appeal and now takes issue with the trial court's decision requiring him to pay child support and alimony *in futuro*. For the reasons stated herein, we affirm the decision of the trial court.

## I.

### *The Facts*

■ This case was decided by the trial court without a jury. In accordance with Tenn.R.App.P. 13(d), the role of this Court is to review the record made in the trial court de novo with the presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. Thus, we will affirm the trial court's decision unless there is an error of law affecting the result or unless the evidence preponderates against the trial court's factual determinations. *Willis v. Smith*, 683 S.W.2d 682, 687-88 (Tenn.App.1984), and *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 300 (Tenn.App.1984).

In lieu of a verbatim transcript of the evidence heard by the trial court on May 10, 1984, the parties have elected to file an abbreviated statement of the evidence pursuant to Tenn.R.App.P. 24(c). This statement, coupled with the lack of complete findings of fact by the trial court, renders our task of reviewing the record more difficult. We do not know with certainty upon what evidence the trial court has based its decision. *Fisher v. Fisher*, 648 S.W.2d 244, 245 (Tenn.1983). However, in the absence of any challenge to the sufficiency of the proof, we will proceed to review the record de novo.

Mr. Campanali, now 42 years of age, married Mrs. Campanali, now 45, in New York in 1966. They have two children,

---

1. Tenn.Code Ann. § 36-4-102(b) [formerly codified at Tenn.Code Ann. § 36-802(b)] provides, in part:

    Provided, however, that the circuit, chancery or such other court specially empowered to grant divorces shall also have the power to grant absolute divorces to either party where there has been a final decree of divorce from bed and board, or of separate maintenance for more than two (2) years, upon a petition being filed by either party that sets forth the original decree for divorce from bed and board, or separate maintenance, and that the parties have not become reconciled.

    Pursuant to *Abney v. Abney*, 222 Tenn. 160, 166, 433 S.W.2d 847, 850 (1968), either party may petition for an absolute divorce, but the divorce can only be granted to the party who obtained the divorce from bed and board.

Michael Nicholas who is presently 17 and Jon Mitchell who is 14. They separated in July, 1979, and on July 31, 1979, Mr. Campanali filed for divorce on the grounds of irreconcilable differences and cruel and inhuman treatment.[2] In January, 1980, Mrs. Campanali filed a counterclaim seeking a divorce from bed and board on the grounds of cruel and inhuman treatment and adultery.

The trial court entered an order on April 24, 1980, referring the case to a special master pursuant to Tenn.R.Civ.P. 53 for the purpose of hearing and adjudicating all *pendente lite* matters. Approximately a year later, on April 16, 1981, the special master filed a report recommending that Mrs. Campanali be granted a divorce from bed and board. The report also recommended that Mrs. Campanali be given custody of the couple's children and that Mr. Campanali pay Mrs. Campanali $366 per month as child support.[3] On June 26, 1981, with the agreement of the parties, the trial court entered an order confirming the special master's report and granting Mrs. Campanali a divorce from bed and board. The trial court also ordered that Mrs. Campanali be given custody of both children and that Mr. Campanali pay Mrs. Campanali $366 per month as child support.

Mrs. Campanali's suspicions about her husband's meretricious relationship proved to be well-founded because as soon as his wife's divorce from bed and board was granted he moved in with his girlfriend and her children. They are apparently living together as husband and wife—even to the point of sharing living expenses.[4] Soon thereafter, contrary to the trial court's order, the parties' oldest son, Michael, left his mother's home and moved in with his father. Apparently, Mrs. Campanali had no objection to this move, although she did

object when Mr. Campanali permitted Michael to drop out of school to enable him to "obtain employment and take care of himself."

Mr. Campanali is an employee of the Metropolitan Fire Department. At the time of trial, he earned a monthly salary of $1,652. He regularly supplimented this salary with the income from a second job. Mr. Campanali had been laid off from this second job at the time of the trial, and thus, there is no proof in the record concerning the nature of his work apart from his regular job or of the amount of income he earned, although there was proof that he was regularly employed at a second job.

At the time of the trial, Mrs. Campanali had been employed by a real estate company for approximately two and one half years. Her monthly salary was $600. She had held a number of other jobs during the past seven and one half years before her present job.

Two years after the divorce from bed and board was granted, Mrs. Campanali filed a petition in the trial court seeking to have her husband held in contempt for failing to pay child support for their younger child "over the past several months." This petition was heard on July 11, 1983, and Mr. Campanali did not seriously contest Mrs. Campanali's allegations. Thus, on August 3, 1983, the trial court entered an order, agreed to by the parties, finding Mr. Campanali in contempt and granting Mrs. Campanali a judgment on the arrearage in the amount of $549. Pursuant to Tenn.Code Ann. § 50-2-105, the trial court directed that a wage assignment be issued to Mr. Campanali's employer to assist in the payment of this arrearage.

On August 2, 1983, Mr. Campanali filed a petition for absolute divorce pursuant to Tenn.Code Ann. § 36-4-102(b). He re-

---

**2.** Mr. Campanali alleged that this wife had "embarked upon a course of constant and excessive nagging" and "that she falsely accuses him of adultery and related things."

**3.** This report also made other recommendations with regard to the disposition of the parties' personal belongings, medical and life insurance,

and the payment of fees and court costs which need no elaboration here.

**4.** Mr. Campanali's financial affairs were sufficiently entangled with his girlfriend's that he included her income and expenses as part of the sworn "Income and Expense Statement" he filed with the trial court on October 26, 1984.

newed this request on January 26, 1984, when he filed another complaint for absolute divorce. Mrs. Campanali filed an answer opposing Mr. Campanali's request that she be granted an absolute divorce because she feared that she would no longer be covered by Mr. Campanali's employee group health insurance program.

On May 7, 1984, Mrs. Campanali filed her second contempt petition alleging that Mr. Campanali had only reduced the previously determined child support arrearage by $42 to $507 and that he had permitted another arrearage in the amount of $549 to accumulate.

The trial court heard these matters on May 10, 1984, and, on May 15, 1984, filed a brief memorandum granting Mrs. Campanali an absolute divorce and for the first time directing Mr. Campanali to pay Mrs. Campanali $200 in alimony *in futuro* as long as she remains unmarried. Reserving the questions pertaining to the divorce, on May 18, 1984, the trial court entered an order finding Mr. Campanali to be in contempt for failing to pay child support and sentencing him to jail should he fail to pay the amount past due before he left the courthouse. The record does not reflect whether Mr. Campanali was able to purge himself of this contempt.

Thereafter, on May 24, 1984, the trial court entered the final order that is the subject of this appeal. The Court granted Mrs. Campanali an absolute divorce and awarded her custody of her son Jon Mitchell.[5] The trial court also directed Mr. Campanali to pay Mrs. Campanali $183 per month for child support and $200 per month as alimony. Mr. Campanali filed a motion to alter or amend pursuant to Tenn. R.Civ.P. 59 which was heard by the trial court on June 15, 1984, and denied on July 3, 1984.

## II.

### The Payment of Child Support

Mr. Campanali argues that the trial court erred by directing him to continue to pay

$183 each month to Mrs. Campanali as child support for their younger son, Jon Mitchell, who continues to live with his mother. His attempt to avoid this responsibility is based upon three points: (1) he was given sole custody of the couple's older son; (2) he does not have the financial resources to pay child support for Jon Mitchell; and (3) both parents have the duty to support their minor children. Mr. Campanali's arguments conveniently ignore the applicable law and the relevant facts.

The trial court is vested with wide discretion in matters relating to child custody and support. Its decisions with regard to these matters will not be reversed unless there is a clear showing of error. *Harwell v. Harwell,* 612 S.W.2d 182, 185 (Tenn.App. 1980), and *Marmino v. Marmino,* 34 Tenn. App. 352, 355, 238 S.W.2d 105, 107 (1950). The General Assembly, through the enactment of Tenn.Code Ann. § 36–5–101(e) has set forth the factors to be considered by the trial court when determining the necessity and amount of child support. From among these factors, this Court has held that the need of the child and the parent's ability to pay should receive the foremost consideration. *Allison v. Allison,* 638 S.W.2d 394, 396 (Tenn.App.1982).

This record shows without much question that Mrs. Campanali is financially unable to support herself and her son on her $600 monthly salary. Her sworn Income and Expense Statement reflects that her base monthly expenses exceed her monthly income by more than thirty percent. These living expenses appear to be basic and reasonable, and thus, we agree with the trial court that Jon Mitchell is in need of additional financial support. His mother's funds are exhausted each month before she is able to pay for his food, clothing, and other modest expenses.

We now turn to Mr. Campanali's ability to pay child support for Jon Mitchell. He

---

5. Mr. Campanali was awarded custody of Michael Nicholas who had been living with him since 1981.

does not question Mrs. Campanali's inability to shoulder this financial burden alone. In essence, Mr. Campanali argues that he should not be required to help support his younger son because he has assumed the sole responsibility to support the couple's older son without any assistance from Mrs. Campanali. The record does not bear out this assertion.

█ Michael Nicholas Campanali is seventeen and still a minor. However, since he began living with his father, he has assumed at least part of the responsibility to support himself. Over his mother's objection, his father has permitted him to drop out of school so he could "obtain employment and take care of himself." In light of his son's contributions to his own support,[6] we conclude that Mr. Campanali's contributions to his older son's support are not so financially onerous that they should enable him to escape his duty to support his younger son.

█ Mr. Campanali's regular monthly income is $1,652. By itself, it is more than two and one half times greater than Mrs. Campanali's monthly income. When Mr. Campanali's ability to earn additional income from part-time jobs is considered together with his girlfriend's income,[7] we agree with the trial court that Mr. Campanali should be required to pay $183 per month to support his younger son.

### III.

### *The Payment of Alimony In Futuro*

Mr. Campanali also contends that the trial court erred by awarding Mrs. Campanali $200 per month in alimony *in futuro* for as long as she remains unmarried. He complains that by doing so, the trial court disregarded the legislative mandate that alimony should be "rehabilitative and tem-

6. Tenn.Code Ann. § 36–5–101(e)(5) permits the court to consider the financial resources available to a child when it is determining how much child support is needed.

7. While Mr. Campanali's girlfriend's income cannot be onerated directly with the burden of his child support, the fact that he admittedly

porary" and failed to place sufficient weight on the fact that he was given sole custody of his older son and is being required to pay $183 a month to support his younger son. We do not agree.

The propriety of awarding alimony as well as the amount depends upon the unique facts of each case. *Williams v. Williams*, 146 Tenn. 38, 46, 236 S.W. 938, 940 (1922), and *Walker v. Walker*, 656 S.W.2d 11, 14 (Tenn.App.1983). Thus, this Court has recognized that the trial court is vested with great latitude when making decisions with regard to alimony. *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn.App.1984).

Both the General Assembly by the enactment of Tenn.Code Ann. § 36–5–101(d) and the courts have delineated the factors to be considered by the trial court in making determinations with regard to alimony. *Fisher v. Fisher*, 648 S.W.2d 244, 246–47 (Tenn.1983), and *Massey v. Massey*, 621 S.W.2d 728, 729–30 (Tenn.1981). This Court has recognized that among these factors, the need of the spouse is the single most important factor followed by the ability of the obligor spouse to pay. *Barker v. Barker*, 671 S.W.2d 843, 847 (Tenn.App. 1984), and *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn.App.1984), *aff'd* (Tenn.1984).

This Court has also recognized a preference for alimony *in solido*, *Spalding v. Spalding*, 597 S.W.2d 739, 741 (Tenn.App. 1980), but has also noted that where there are insufficient funds in the estate to make an award of alimony *in solido*, an award of alimony *in futuro* is proper. *Aleshire v. Aleshire*, 642 S.W.2d 729, 733 (Tenn.App. 1981).

█ We have reviewed what record has been provided to us in the manner required

counts this income as his for the purpose of paying his monthly expenses is relevant in our determination of Mr. Campanali's own financial ability to pay child support. This income, in part, pays expenses he would otherwise be responsible to pay, thus, enabling him to spend money for other things.

by Tenn.R.App.P. 13(d) and do not find that the evidence preponderates against the trial court's decision. Mrs. Campanali's Income and Expense Statement graphically depict her destitution. At the same time, her husband's Income and Expense Statement and other proof indicate that his financial situation, while not luxurious, is somewhat more secure. Based upon his present earnings as well as his conceded capacity to earn additional funds, we agree with the trial court that he has the means to pay his wife the alimony required by the trial court.[8] In 1981, approximately three years prior to the entry of the decree requiring Mr. Campanali to pay Mrs. Campanali child support and alimony in the total amount of $383 a month, Mr. Campanali agreed to pay Mrs. Campanali $366 a month to support his two children. This record does not contain proof of any materially changed circumstances which would be sufficient to excuse Mr. Campanali from an obligation the amount of which is not dissimilar to one he had already voluntarily agreed to assume.

For the reasons stated herein, the judgment of the trial court is affirmed, and the case is remanded.

The costs of this appeal are taxed to Mr. Campanali and his surety for which execution, if necessary, may issue.

TODD, P.J., and LEWIS, J., concur.

---

**8.** The record is silent concerning the other factors included in Tenn.Code Ann. § 36–5–101(d). In absence of a record concerning these matters, we presume that the trial court had an adequate factual basis upon which to make its decision. *Lallemand v. Smith,* 667 S.W.2d 85, 87 (Tenn.App.1983).