# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

**FILED**

**October 4, 1995**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| **TONYA RENEE JACKSON,** | ) | |
| | ) | |
| Plaintiff/Counter-Defendant/ | ) | **Williamson Circuit No. 93337** |
| Appellee, | ) | |
| | ) | |
| **VS.** | ) | **Appeal No. 01A01-9504-CV-00132** |
| | ) | |
| **KEITH GEORGE JACKSON,** | ) | |
| | ) | |
| Defendant/Counter-Plaintiff/ | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE
THE HONORABLE HENRY DENMARK BELL, JUDGE

**TAMMY L. KENNEDY**
**WILLIAMS AND DINKINS**
Nashville, Tennessee
Attorney for Appellant

**MICHAEL S. BLIGH**
Nashville, Tennessee
Attorney for Appellee

**AFFIRMED IN PART, MODIFIED IN PART**
**AND REMANDED**

**ALAN E. HIGHERS, JUDGE**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HEWITT P. TOMLIN, JR., SP. J.**

This case involves a dispute over child custody and division of marital property as

decreed by the trial court in a divorce case.

Appellant, Keith George Jackson (Husband) and Appellee, Tonya Renee Jackson (Wife), were married on October 1, 1988. They separated on or about May 21, 1993, and a final decree of divorce was entered October 3, 1994. The parties had one child during their marriage, Nia Renee Jackson, who was three years old at the time of trial.

At the time of their separation, the parties had incurred an estimated $18,000 in debts, all of which were listed in Wife's name. (R. 24) All of these debts were discharged in bankruptcy during the pendency of the divorce proceedings.

While the parties were married, Husband placed his extra income from his job at Saturn Corp. into a mutual fund. At the time of the parties' separation, the fund was worth approximately $18,000, and the fund increased in value to $20,371.82 at the date of the final hearing.

The court awarded Wife $18,500 of the mutual fund. The court reasoned that but for the fact that Wife declared bankruptcy, there would have been no property division because the value of the estate would have been zero. The trial judge further relied upon the fact that Husband's earning capacity was more than double that of Wife's earning capacity. The Husband was granted a divorce on the grounds of the Wife's adultery. The court determined that Wife was not entitled to alimony and declined to award either party attorney's fees. Wife was awarded sole custody of the parties' one child, Nia, and Husband was ordered to pay child support in accordance with the child support guidelines.

**Child Custody**

The Husband has raised two issues for our review on appeal. First, he contends that the lower court erred in awarding sole custody of Nia to Wife. Husband implores this Court to award to him either sole custody or joint custody. Next, he argues that the trial

2

court inequitably distributed the marital estate by valuing the estate at zero and by awarding the mutual fund to Wife.

This case was tried without a jury. Consequently, pursuant to T.R.A.P. 13(d), this Court is required to make a *de novo* review of the trial court's findings of fact with a presumption of correctness, unless the evidence preponderates otherwise.    Jones v. Jones, 784 S.W.2d 349, 352 (Tenn. App. 1989); Campanali v. Campanali, 695 S.W.2d 193, 194 (Tenn. App. 1985).  Additionally, trial courts are vested with wide discretion in matters of child custody and reviewing courts will not interfere except upon a showing of an abuse of discretion.  Grant v. Grant, 39 Tenn. App. 539, 286 S.W.2d 349, 350 (1954); Marmino v. Marmino, 34 Tenn. App. 352, 238 S.W.2d 105, 107 (1951).

In determining issues of child custody, our primary concern is the best interest and welfare of the child.  Barnhill v. Barnhill, 826 S.W.2d 443, 453 (Tenn. App. 1991).  Courts routinely employ a comparative fitness analysis, whereby the court determines which of two or more available custodians is more fit than others.  Bah v. Bah, 668 S.W.2d 663, 666; Edwards v. Edwards, 501 S.W.2d 283, 290 (Tenn. App. 1973).

The trial judge in this case had the opportunity to observe the manner and demeanor of the witnesses as they testified and was thereby in a  better position than this Court to observe the witnesses and evaluate their characteristics and fitness as custodians.  Therefore, the credibility accorded by the trier of fact will be given great weight by the appellate court. Weaver v. Nelms, 750 S.W.2d 158,160 (Tenn.Ct.App.1987). (citations omitted).

In this case, the court elected to award custody to Wife.  Upon a thorough review of the record before us, we are unable to say that the evidence preponderates against the trial court's decision, nor does the record support a finding of abuse of discretion.

Husband argues that we should award joint custody of Nia if we decline to award

3

him sole custody. There is ample evidence from the record that both parties displayed admirable parenting skills. It is further apparent that both parties love Nia and both appear fit and proper to have custody. This Court, however, has previously recognized that joint custody often results in detrimental effects to the children. In Dodd v. Dodd, 737 S.W.2d 286, 289 (Tenn. App. 1987), this Court stated:

> The experience of this Court has been that joint custody rarely, if ever, works--for the children. There needs to be one residence, one haven in all the storms of life, including those storms whipped up by the winds of divorce. There needs to be one parent with primary control and responsibility for the upbringing of the parties' children, whenever possible...

See also, Malone v. Malone, 842 S.W.2d 621, 623 (Tenn. App. 1992)(overturning lower court's award of joint custody, noting that the Court of Appeals has previously disfavored joint custody awards).

In most instances, joint custody will not be in the best interest of a child due to the existence of a strong potential for conflict between the parents. Barnhill, 826 S.W.2d at 454.

We choose to continue to adhere to the sentiments of this Court disfavoring joint custody. We therefore affirm the lower court's award of sole custody to Wife.

**Division of Marital Property**

We will next consider Appellant's contention that the court erred in its valuation and distribution of the marital estate.

The parties accumulated indebtedness of approximately $18,000 during their marriage. Their only significant marital asset was a mutual fund, containing an estimated $18,000 that had appreciated in value to $20,371.82 by the time of the hearing. (T.R. 107) During the pendency of the divorce case, Wife bankrupted on the $18,000 debt. Accordingly, at trial, the estate was comprised almost entirely of the mutual fund.

4

In the case at bar, the trial court stated in his opinion as follows:

> Considering that but for wife's bankruptcy there would be no property for division and considering that husband's earning capacity is more than double that of wife, the court concludes that wife should have the lion's share of the mutual fund. Wife's share will be $18,500. (T.R. 107)

Trial courts have broad discretion in dividing martial estates, and their decisions are afforded great weight on appeal. Fisher v. Fisher, 648 S.W.2d 244, 246 (1983); Harrington v. Harrington, 798 S.W.2d 244, 245 (Tenn. App. 1990). Moreover, findings of the trial court are accompanied by a presumption of correctness, unless the evidence preponderates otherwise. Barnhill v. Barnhill, 826 S.W.2d 443, 459 (Tenn. App. 1991). Although ownership of the marital estate should be presumed to be equal until proved otherwise, Kelly v. Kelly, 679 S.W.2d 458, 462 (Tenn.App.1984); Salisbury v. Salisbury, 657 S.W.2d 761, 770 (Tenn.App.1983), a trial court's division of property need not be equal to be equitable. Batson v. Batson, 769 S.W.2d 849, 859 (Tenn. App. 1988). As a general matter, courts will evaluate the fairness of a property division by its final results. Thompson v. Thompson, 797 S.W.2d 599, 604 (Tenn. App. 1990).

T.C.A. § 36-4-121(c) sets forth the factors a court should consider when making an equitable division of marital property:

> (c) In making equitable division of martial property, the court shall consider all relevant factors including:
> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contributions by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled his or her role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

T.C.A. § 36-4-121(c).

It is apparent from the record that the trial judge considered the bankrupted debt in its division of the property. While we do not believe that the trial court's consideration of this factor was improper, it was unnecessary because marital property is to be valued "as of a date as near as reasonably possible to the final divorce hearing date." T.C.A. § 36-4-121(b)(1)(A). In the present case, at the time of trial, the marital estate was comprised of a mutual fund valued at $21,371.82. The task of this Court, then, is to apply the above delineated principles of law to the lower court's decision awarding the bulk of the fund to Wife.

The most pertinent factors in the instant case that bear upon the manner in which the property should be divided are as follows: (1) Wife was not awarded alimony, which falls under the factor regarding the economic circumstances of each party at the time that the property division is to become effective; T.C.A. § 36-4-121(c)(8). (2) Husband's earning capacity is much greater than that of Wife. At the time of trial, Husband's income was approximately $50,000, while Wife made only $17,000 in her job as a bank teller ; (3) the marriage was of relatively short duration, which serves to diminish the value of a spouse's nonmonetary contributions; Batson v. Batson, 769 S.W.2d 849, 859. (Tenn. App. 1988). (4) Husband was the sole creator and contributor to the mutual fund; (R. 63-65) and (5) The parties were 29 years old at the time of trial.

Although earning capacity is certainly an important factor in evaluating whether a distribution is equitable, it is by no means dispositive. We cannot in good conscience rely solely upon that factor in divesting Husband of virtually the entire marital estate that he so prudently created and maintained. The above factors weigh almost equally with respect to each party.

Pursuant to the statutory factors set forth in T.C.A. § 36-4-121, therefore, we find

6

that the more equitable solution is to award each of the parties one half of the fund which they accumulated.

For the foregoing reasons, the judgment of the trial court is affirmed in part and modified in part, and the cause remanded for further proceedings consistent with this opinion.  The costs on appeal are assessed to Appellant.

_____
HIGHERS, J.


CONCUR:


_____
FARMER, J.


_____
TOMLIN, SP. J.

7