JOEL THOMAS CATLETT, JR., )
)
    Plaintiff/Appellant, )
)     Appeal No.
)     01-A-01-9605-CH-00244
VS. )
)     Williamson Chancery
)     No. 23509
MARJEAN GE'NELL PERRYMAN )
CATLETT, )
)
    Defendant/Appellee. )

**FILED**

**January 8, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CHANCERY COURT OF WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE

THE HONORABLE HENRY DENMARK BELL, JUDGE

PAUL T. HOUSCH
211 Third Avenue, North
P. O. Box 198288
Nashville, Tennessee 37219-8288
    Attorney for Plaintiff/Appellant

VIRGINIA LEE STORY
136 4th Avenue, South
P. O. Box 1608
Franklin, Tennessee 37065
    Attorney for Defendant/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

The trial court granted the parties a divorce, and ordered the husband to pay the wife alimony in futuro. The parties were also granted joint custody of the teenage children, with the husband to have primary physical custody. On appeal, the husband challenges the nature and amount of the alimony award, and the trial court's failure to order the wife to pay child support. We remand this case to enable the trial court to make the findings of fact in regard to child support that are required by Tenn. Code Ann. § 36-5-101(e)(1). In all other respects we affirm the trial court.

**I.**

Joel Thomas Catlett and Marjean Ge'Nell Perryman married in 1976. It was the second marriage for both. The parties separated on July 24, 1995, and were subsequently divorced. The husband was a framing contractor, who earned a substantial income. The wife stayed at home and raised the two children of the marriage, Jeffery Kane Catlett, born on May 16, 1978, and Floyd Joel Catlett, born on April 23, 1979. The parties enjoyed a very comfortable standard of living, but the husband failed to accumulate any assets of value, and did not put away any money for emergencies or for retirement.

The wife sometimes worked part-time during the marriage, but she never earned much above the minimum wage. She had dropped out of high school in her junior year, and had problems with reading because of dyslexia. She also suffered an injury during a fishing trip with her husband that left her blind in one eye. She was interested in bettering herself, and took the real estate licensing exam four times, but was unable to pass. After the parties separated, she took her G.E.D. exam. She did not pass, but she wishes to try again.

The proof showed that neither party is afraid of hard work, but that the husband has the overwhelmingly greater earning capacity because of his skills and

his experience in the construction business. The court had some difficulty in determining the appropriate amount of personal income to attribute to Mr. Catlett for the purpose of setting alimony, because he had failed to file any income tax returns for the ten years prior to the divorce, and his records were somewhat disorganized. On the basis of information he supplied as to his income for the most recent five years, the trial court found the husband's earning capacity to be $7,200 per month. The wife had most recently worked at a country club, doing manual labor for $6.00 per hour.

The court ordered the husband to pay the wife $3,000 per month as alimony in futuro, with the obligation to be decreased to $1,000 per month after 36 months. The husband argues on appeal that the trial court should have ordered rehabilitative alimony rather than alimony in futuro, and that the amount of alimony ordered was excessive in light of the husband's own personal expenses, the uncertainty of his income, and the possibility that he might become liable to the Internal Revenue Service for substantial back taxes and penalties.

## II.

The husband relies upon Tenn. Code Ann. § 36-5-101(d)(1), in which our legislature has stated a preference in divorce cases for rehabilitative alimony over alimony in futuro.

> It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long term basis . . . .

We see no inconsistency between the mandate of the legislature and the result in this case. The trial judge incorporated portions of the transcript relating to alimony into the Final Decree of Divorce as findings of fact. In discussing the difficulties the wife had to deal with, the judge stated, "I think there's a good chance that she can be substantially rehabilitated. I think there's a fair chance she might not be."

The judge went on to say that he would initially set the amount of alimony high because he wanted to give the wife the opportunity to do some schooling or to take other steps to improve her earning capacity in the period following divorce. After that period, the alimony would be reduced, but not eliminated, because the wife's handicaps might make it impossible for her to become totally self-supporting. Thus, the first period of alimony is meant to be "rehabilitative" in fact, if not in name. The second period of alimony protects the wife's right to long-term support if that should remain necessary.

**III**.

In determining the manner, amount and duration of alimony, the trial court is directed by the legislature to consider all relevant factors including those that are specifically listed in categories (A) through (L) under subsection (d) of Tenn. Code Ann. § 36-5-101.

Although we do not feel it necessary to recite all those factors here, we note that virtually all of them indicate that the wife in the present case is entitled to a generous amount of support from her former husband. Some of the most important for the purposes of this case are the relative earning capacities of the parties, the lack of separate property or other financial resources for the wife to rely upon, the duration

of the marriage, the standard of living the parties established during the marriage, and the relative fault of the parties.[1]

This court has stated many times that the amount of alimony is a matter in the sound discretion of the trial court, and that the need of the disadvantaged spouse is the most important consideration, followed by the ability of the obligor spouse to provide support. *Lancaster v. Lancaster*, 671 S.W.2d 501 (Tenn. App. 1984); *Campanali v. Campanali*, 695 S.W.2d 193 (Tenn. App. 1985); *Cranford v. Cranford*, 772 S.W.2d 48 (Tenn. App. 1989); *Loyd v. Loyd*, 860 S.W.2d 409 (Tenn. App. 1993).

Both parties submitted monthly income and expense statements to assist the court in determining the appropriate amount of support to set. The wife's statement indicates minimal income, and expenses in excess of $3,000 per month. This sum includes $400 for psychological counseling to overcome the effects of the abuse she suffered during the marriage. The wife had not yet begun such counseling, but she feels it could be an important component of her rehabilitation. She also testified that she is interested in enrolling in a junior college after getting her G.E.D., but her income statement did not include the projected expenses of this plan.

The husband contends that his income is likely to be inadequate to meet both his own living expenses and the alimony ordered by the court. He notes that he is self-employed, that framing is a highly competitive and cyclical business, and that he may become obligated to the Internal Revenue Service for a large sum in the near future. He also states that he is no longer as physically capable of picking up heavy materials and climbing onto the structures on the job site as he was when he was younger.

---

[1] Although divorce was granted to both parties in accordance with Tenn. Code Ann. § 36-4-129, the record indicates that the wife agreed to drop her demand that divorce be granted to her on the grounds of the husband's inappropriate marital conduct in exchange for a stipulation that the proof regarding relative fault be considered in connection with alimony.

The husband submitted an expense statement which indicates monthly living expenses of $5,855, including the $2,000 in alimony pendente lite that the court ordered prior to the filing of its final order. He also submitted an income statement that indicates a gross income for his business of $14,000 per month, and a net income after business expenses and after income taxes of $4,226, resulting in a monthly household deficit of about $1,628.

We note, however, that Mr. Catlett has apparently not yet taken any steps to report his taxable income to the I.R.S. We note also that the Certified Public Accountant who was hired to review his business records and to help prepare his income statement report was unable to calculate his business expenses directly from those records because of their disorganized state. The CPA had to rely instead on statistics for contractors and carpentry work nationwide, even though it is unclear whether Mr. Catlett's business practices are typical of the industry as a whole. Further, there appears to be some leeway for savings on the expense side.

Some of the expenses Mr. Catlett listed were $1,400 for rent, $380 for electricity, $450 for groceries, lunches and allowances for the two boys in the amount of $350, $350 for gasoline, another $350 for payments on a pickup truck, and payments on a jet ski of $215. At the time of trial, some of these figures were in flux, as the husband was planning to move to a less expensive house, but had not yet found one to his liking, and he was not yet making any payments on a pickup truck, because he was driving one lent to him by a builder he was working for.

We do not doubt that Mr. Catlett will have some difficulty meeting his alimony payments. We also respect the strenuous nature of the work involved with his chosen occupation, and the uncertainties inherent in self-employment. We do not feel, however, that the trial court erred in basing the initial alimony award on the future expenses the wife will likely encounter in her efforts to rehabilitate herself, and the

amount of income the court believes to be currently available to the husband. The judge encouraged Mr. Catlett to honor his obligations to the I.R.S., but chose not to make a premature adjustment in the alimony in anticipation of the penalties that might be imposed.

We note that alimony in futuro remains within the jurisdiction of the court, and may be modified upon a showing of a significant and material change in circumstances. *Seal v. Seal,* 726 S.W.2d 934 (Tenn. App. 1986); *Jones v. Jones*, 784 S.W.2d 349 (Tenn. App. 1989); *Bowman v. Bowman*, 836 S.W.2d 563 (Tenn. App. 1991). Prior to any such changes, the court relies upon its understanding of the current financial status of the parties. On the basis of the record before us, we do not feel that the trial court abused its discretion in the manner in which it fashioned this alimony award.

## IV.

The husband was granted physical custody of the children of the marriage, with the wife to receive "standard visitation." In the final decree of divorce, the trial court stated that "due to Mother's lack of employment and disparity of income of the parties, no child support is set at this time."

The wife notes that the older boy turned eighteen years of age on May 16, 1996, five months after the filing of the Final Decree of Divorce. The younger boy will reach his majority on April 23, 1997. The older boy was working in the father's framing business at the time of trial and earning $10 per hour. The wife asserts that the younger boy is also working with his father now.

The husband argues that the trial court erred in declining to order the wife to pay him child support out of her income from alimony and part-time work. He

correctly points out that the law creates a rebuttable presumption that the non-custodial parent is obligated to pay child support to the custodial parent in accordance with the child support guidelines established by the legislature. See Tenn. Code Ann. § 36-5-101(e)(1). The same statute goes on to say:

> . . . If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for a variance from the guidelines.

It appears to us that while the trial court may have found the application of the guidelines inappropriate in this case, it failed to fully comply with the above requirements. Those requirements are not a mere formality, as they strengthen a presumption which was created to protect the rights of minor children. We therefore remand this case to the trial court with instructions to make the required findings, unless it believes that the application of the guidelines would in fact be appropriate, in which case it must order child support.

## V.

The judgment of the trial court is affirmed, but the court is ordered to amend its decree to conform to the requirements of Tenn. Code Ann. § 36-5-101(e)(1). This cause is remanded to the trial court for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

- 8 -

CONCUR:

- 9 -

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
WILLIAM C. KOCH, JR., JUDGE

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

JOEL THOMAS CATLETT, JR.,            )
                                     )
        Plaintiff/Appellant,         )       Appeal No.
                                     )       01-A-01-9605-CH-00244
                                     )
VS.                                  )       Williamson Chancery
                                     )       No. 23509
                                     )
MARJEAN GE'NELL PERRYMAN             )       Affirmed
CATLETT,                             )       and
                                     )       Remanded
        Defendant/Appellee.          )

## **J U D G M E N T**

This cause came on to be heard upon the record on appeal from the Chancery Court of Williamson County, briefs and argument of counsel; upon consideration whereof, this Court is of the opinion that in the decree of the Chancellor there is no reversible error.

In accordance with the opinion of the Court filed herein, it is, therefore, ordered and decreed by this Court that the decree is affirmed. It is further ordered by this Court that the cause be remanded with instructions for the trial court to make written findings of fact as required by Tenn. Code Ann. § 36-5-101(e)(1).

Costs of this appeal are taxed against Joel Thomas Catlett, Jr., Principal, and Paul T. Housch, Surety, for which execution may issue if necessary.

ENTER _____.


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
BEN H. CANTRELL, JUDGE


_____
WILLIAM C. KOCH, JR., JUDGE