IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

March 24, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

DAVID HILL                    )   HAMBLEN COUNTY
                              )   03A01-9804-CV-00127
     Plaintiff-Appellee       )
                              )
                              )
     v.                       )   HON. KINDALL T. LAWSON,
                              )   JUDGE
                              )
PAMELA GAYE HILL              )
                              )   AFFIRMED AS MODIFIED
     Defendant-Appellant      )   AND REMANDED


DENISE TERRY STAPLETON OF MORRISTOWN FOR APPELLANT

MARTHA MEARES and ANNE T. McCOLGAN OF MARYVILLE


O P I N I O N


                                        Goddard, P.J.


        Pamela Gay Hill appeals a divorce judgment rendered by
the Hamblin County Circuit Court.  Ms. Hill raises three issues
on appeal:


ISSUE ONE
        The Trial Judge erred in not considering evidence on
the issue of alimony.


ISSUE TWO

The Trial Judge erred in mechanically dividing the marital property in proportion to debts assumed by the parties.

ISSUE THREE

The Trial Court erred in allowing standard, unsupervised visitation with the husband.

The parties married on May 27, 1992, in Myrtle Beach, South Carolina. Lizabeth Paige Hill, age four at the time of trial, is the only child born to this marriage.

Ms. Hill is a graduate of the University of Tennessee with a degree in social work. During the course of the marriage, Ms. Hill occasionally worked in retail. In 1997, Ms. Hill earned $7,700 from various jobs. At the time of trial, Ms. Hill worked as a social worker for the State of Tennessee with Douglas-Cherokee Economic Authority. Ms. Hill's position with Douglas-Cherokee paid an annual salary of $13,000. Ms. Hill made plans to attend video reporting school after her divorce and investigated obtaining a loan to purchase equipment to start such a business.

Mr. Hill is currently employed in commercial real estate management with Melrose Place, Ltd. Mr. Hill's annual base salary is $47,000, but Mr. Hill's gross income can be substantially increased by end of the year bonuses. Mr. Hill received a bonus in the net amount of $8,100 in 1997.

Mr. Hill filed a complaint for absolute divorce on February 6, 1997. On February 19, 1997, Ms. Hill filed her

2

answer and counter-complaint for an absolute divorce.  The cause of action was heard on February 2, 1998, in the Circuit Court for Hamblen County.  During preliminary matters, Mr. Hill dismissed his complaint and stipulated the divorce to Ms. Hill based upon the counter-complaint.

During the hearing, Ms. Hill sought to try the issue of alimony.  Mr. Hill objected on the basis that the answer and counter-claim only contained provisions seeking pendente lite support.  Referring to the pleadings, the Trial Court ruled that the issue of alimony should not be tried because it was not specifically plead.  Ms. Hill reserved her right to make an offer of proof on the need for alimony.

Ms. Hill testified at trial that Mr. Hill displayed aggressive behavior and inappropriate language towards Ms. Hill.  Ms. Hill also alleged that these actions occurred in the presence of their daughter on several occasions.  For these reasons, Ms. Hill sought restrictions on Mr. Hill's visitation with their daughter.  Mr. Hill testified that this behavior arose out of difficulty in exercising visitation with his daughter.

On April 6, 1998, the Trial Court granted the parties an absolute divorce.  In its Final Judgment of Divorce, the Trial Court set out a standard, unsupervised visitation schedule for Mr. Hill.  The Trial Court also established transportation arrangements, communication specifics, and behavior requirements for each parent.

3

The Trial Judge also approved a submitted agreement regarding the responsibility of debts in his Final Judgement. He attributed liability of $9,164.00 to Mr. Hill. He also required Mr. Hill to pay $597 for the parties' 1996 property taxes, $2,807.50 to Ms. Hill for attorney fees, and $2,000 to Ms. Hill as her portion of a tax refund. Mr. Hill was awarded all of his separate property, his retirement 401k account in the amount of $11,449.01, as well as his $8,100 bonus.

Ms. Hill was required to assume debts of the parties in the amount of $3,822. Ms. Hill was awarded all of her separate property brought into the marriage, all other marital property, and a State Farm Life Insurance Policy valued by the Trial Court at $3,500. The Trial Court estimated the value of all marital assets awarded to Ms. Hill at $10,945. After the Trial Judge rendered his decision, Ms. Hill made an offer of proof to establish her need for alimony.

On April 13, 1998, Ms. Hill filed a Notice of Appeal requesting review of the issues of rehabilitative alimony, division of marital assets and debts, and visitation.

Our review of cases tried without a jury is de novo upon the record with a presumption of correctness as mandated by Rule 13(d) of the Tennessee Rules of Appellate Procedure. This Rule requires us to uphold the factual findings of the trial court unless the evidence preponderates against them. Campanali v. Campanali, 695 S.W.2d 193 (Tenn.Ct.App. 1985).

A.

4

Ms. Hill's first issue on appeal is that the Trial Court erred in refusing to consider the issue of alimony or to permit her to amend her complaint. She stated in her pleadings "Husband/Counter-Defendant is able to provide a reasonable amount of temporary spousal support to Wife. . . . WHEREFORE, Wife/Counter-Plaintiff Prays: . . . [t]hat Husband/Counter-Defendant be required to pay temporary spousal support." Furthermore, Tennessee Code Annotated §36-5-101(d)(1) states "[i]t is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance." In her appellate brief, Ms. Hill argues that her allegation in the complaint meets the requirement of the statute. While we do believe that Ms. Hill could have been clearer in seeking rehabilitative alimony, we cannot agree with the Trial Court that Ms. Hill did not ask for rehabilitative alimony in the pleadings.

Furthermore, Rule 15 of the Tennessee Rules of Civil Procedure provides in relevant part:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires.

Tenn. R. Civ. P. 15.01. After a responsive pleading has been served, the denial of a motion to amend the pleadings lies within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of that discretion. Hall v. Shelby

5

County Retirement Bd., 922 S.W.2d 543, 546

(Tenn.Ct.App.1995)(citing Merriman v. Smith, 599 S.W.2d 548, 559

(Tenn.Ct.App.1979); Welch v. Thuan, 882 S.W.2d 792, 793

(Tenn.Ct.App.1994)). There are several considerations a trial

judge should evaluate in determining whether to grant or deny a

motion to amend. Among these factors are an undue delay in

filing, lack of notice to the opposing party, bad faith by the

moving party, repeated failure to cure deficiencies by previous

amendments, undue prejudice to the opposing party, and futility

of amendment. Welch, 882 S.W.2d at 793 (citing Merriman, 599

S.W.2d at 559).

In light of the foregoing factors, even if Ms. Hill's

pleadings failed to request rehabilitative alimony, there is no

justification for the Trial Court's denial of Ms. Hill's motion

to amend. The pleadings clearly placed Mr. Hill on notice that

Ms. Hill was seeking spousal support; therefore, Mr. Hill would

in no way be prejudiced by allowing amendment to clarify the

pleadings.

For the foregoing reasons, justice demands that we

remand this issue to the Trial Judge for him to determine whether

rehabilitative alimony is appropriate and if so the amount and

duration thereof.

B.

Ms. Hill's second issue on appeal is that the Trial

Court erred in mechanically dividing the marital property in

proportion to debts assumed by the parties. Furthermore, Ms.

6

Hill alleges that the Trial Court erred in awarding Mr. Hill's 401k retirement plan and the $8,100 bonus to him.

Trial courts have wide discretion concerning the division of the parties' marital estate. <u>Wallace v. Wallace</u>, 733 S.W.2d 102 (Tenn.Ct.App. 1987). Moreover, a division of marital property by the trial court is entitled to great weight on appeal, and is presumed proper unless the evidence preponderates otherwise. <u>Batson v. Batson</u>, 769 S.W.2d 849 (Tenn.Ct.App.1988); <u>Lancaster v. Lancaster</u>, 671 S.W.2d 501 (Tenn.Ct.App. 1984). As with alimony, such findings by the trial court will not be disturbed on appeal unless its discretion has been manifestly abused and its conclusions regarding property division result in manifest injustice. <u>Ingram v. Ingram</u>, 721 S.W.2d 262 (Tenn.Ct.App. 1986); <u>Butler v. Butler</u>, 680 S.W.2d 467 (Tenn.Ct.App. 1984). Furthermore, such divisions of property do not necessarily need to be equal in order to be equitable. <u>Mondelli v. Howard</u>, 780 S.W.2d 769 (Tenn.Ct.App. 1989).

In the case at hand, the Final Judgment of Divorce awarded all marital property remaining in the marital home to Ms. Hill.[1] The Trial Court valued this property at $7,445. The Trial Court also awarded Ms. Hill a life insurance policy valued at $3,500 which increases the total value of the marital property awarded her to $10,945. In the parties' agreement as to the division of marital debt, Ms. Hill was required to assume debts in the amount of $3,822.

---

[1] These items included, among other things, two leather recliners, one end table, Lenox china valued at $3,000 and crystal valued at $1,500.

7

Conversely, the Trial Court awarded Mr. Hill his 1998 bonus which netted $8,100 after taxes and all of his 401k retirement plan valued at $11,449.01. The total value of the marital property awarded to Mr. Hill is $19,549. Mr. Hill was held liable for marital debts in the amount of $9,164.

In an effort to establish an equitable division, the Trial Court ordered Mr. Hill to pay Ms. Hill's attorney fees which amounted to $2,807.50 and the property taxes due on the marital home for 1996 which amounted to $597.50. Furthermore, the Trial Court ordered the parties to file a joint tax return. Ms. Hill testified that she would receive a tax refund of between $2,000 and $2,500 for filing separately from Mr. Hill. On the other hand, Mr. Hill testified that he would liable for another $2,500 if the parties filed separate tax returns. Mr. Hill further testified that he would receive a $200 refund if the parties filed a joint tax return. After hearing this testimony, the Trial Court ordered the parties to file jointly and furthermore ordered Mr. Hill to pay Ms. Hill $2,000 for the money she would have received for filing separately. According to our calculations, Mr. Hill saved approximately $700 for filing a joint return, while filing a joint return cost Ms. Hill up to $500.

Also, according to our calculations, Mr. Hill received $7,680 from the division of the marital property while Ms. Hill

8

received $6,623.[2]  We conclude under the facts of this case that the division of marital property was equitable.

---

[2]     In arriving at these totals, we took into account the value of marital assets received by each party, the debt each party was required to assume and any other payments ordered by the Trial Court including the amounts received by filing a joint tax return.

9

C.

Ms. Hill also alleges that the Trial Court erred in allowing standard, unsupervised visitation with Mr. Hill. Ms. Hill argues that the Trial Court failed to give her evidence the weight it deserved in making its determination about visitation and erred by making its determination regarding standard visitation before all of the evidence was presented by the parties.

Dealing first with the evidentiary issues, Ms. Hill alleges that the Trial Court erred in failing to allow into evidence an audio tape containing several incomplete conversations spliced onto one audio tape. The Trial Court did not exclude the taped conversations between the parties, but did exclude from admission into evidence the tapes with incomplete conversations spliced on one tape. As stated in Rule 106 of the Tennessee Rules of Evidence, "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." As these were incomplete portions of entire conversations, the Trial Court properly excluded the spliced audio tape pursuant to Rule 106 of the Tennessee Rules of Evidence upon Mr. Hill's objection.

Ms. Hill further alleges that the Trial Court erred by excluding entry into of evidence of a journal kept by Ms. Hill for two years. Mr. Hill objected to the entry into evidence of

10

the journal because he had not been provided an opportunity to review the document.  The Trial Court did allow Ms. Hill to refresh her recollection regarding the incidents in question.  After reviewing the journal, Ms. Hill was able to testify fully and accurately regarding each situation.

Ms. Hill argues that the Trial Court should have allowed the journal to be read into evidence according to Rule 803(5) of the Tennessee Rules of Evidence which states:

> (5) Recorded Recollection.  A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly.  If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

In the case at hand, Ms. Hill had the ability to testify fully and accurately after refreshing her recollection.  For this reason, Ms. Hill's journal does not fall under the recorded recollection hearsay exception.  The Trial Court properly allowed the journal to be used to refresh recollection while refusing to allow its contents to be read into evidence.

As with issues of property division, a trial court has wide discretion in matters of custody and visitation; when a trial court decides a case without a jury, its findings of fact on appeal are presumed to be correct unless the evidence in the record preponderates against them.  Sherrod v. Wix, 849 S.W.2d 780 (Tenn.Ct.App. 1992).  "In reviewing child custody and visitation cases, we must remember that the welfare of the child has always been the paramount consideration."  Luke v. Luke, 651

11

S.W.2d 219, 221 (Tenn.1983). Furthermore, as stated in <u>Guill</u>

<u>v. Carr</u>, an unpublished decision of this court, filed in

Nashville on November 17, 1993:

> the courts customarily grant visitation to the
> noncustodial parent as long as the advantages to the
> noncustodial parent and to the child can be found to
> outweigh the disadvantages to the child. . . . Thus the
> primary consideration in a visitation dispute is the
> child's best interest. . . . The best interest analysis
> used in visitation cases, like its counterpart in
> custody cases, is inherently subjective. It requires
> the consideration of numerous facts unique to each case
> and the weighing of many of the same factors used to
> make custody decisions. Since the outcome often hinges
> on subtle factual nuances and the demeanor of the
> witnesses, we consistently decline to disturb decisions
> based on a trial court's singular ability to assess the
> witnesses' credibility. (citations omitted).

In the case at hand, Ms. Hill alleged that Mr. Hill was

irresponsible and unreliable in the care of their child. Ms.

Hill introduced tape recorded conversations in which Mr. Hill

used what could be deemed inappropriate language. Ms. Hill also

entered evidence that Mr. Hill at times displayed a violent

temper. Conversely, Mr. Hill provided several witnesses who

testified that he provides quality care for his child. Mr. Hill

admitted to occasionally losing his temper and using

inappropriate language, but the Trial Court took all of these

issues into consideration in its decision as evidenced by its

ruling from the bench:

> There, of course, has been some proof where the
> husband has admittedly made a number of statements and
> said things and admits that it was inappropriate,
> shouldn't have done it. I hear or heard the tapes and
> the ones that I heard seemed to involve a discussion
> over visitation. There was raised voices on both sides
> and they were arguing over the child visitation.

> I find that it's appropriate that the father
> should have visitation with the child. I would caution
> you that certainly this language should never be used
> around the child, anything close to that. And, of
> course, I find that proof is that the husband has

apparently a bit of a temper that you may need to learn to control a little better, frankly.  A lot better around this child.

But, there's no proof that the husband ever hurt the child, hit the child or anything.  And so, he should have visitation.  And I see no reason that it shouldn't be the standard visitation.

The evidence in this case clearly shows that both the parent and child would benefit from visitation.  Therefore, we hold that the evidence supports the decision of the Trial Court and certainly does not preponderate against visitation with Mr. Hill.  For these reasons, the visitation awarded Mr. Hill by the Trial Court is affirmed.

For the foregoing reasons the judgment of the Trial Court is affirmed as modified and the cause remanded for the Trial Court to consider the issue of rehabilitative alimony. Costs of appeal are adjudged one-half to Ms. Hill and her surety and one-half to Mr. Hill.

13

_____
Houston M. Goddard, P.J.


CONCUR:



___(Not Participating)_____
Don T. McMurray, J.



_____
Charles D. Susano, Jr., J.