IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
HEARD AT COOKEVILLE[1]
June 2, 2004 Session

## SYNTHIA M. HOPKINS  v.  VICTOR L. HOPKINS

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Montgomery County**
**No. 2001-01-0072      Carol Catalano, Chancellor**

_____

**No. M2002-02233-SC-R11-CV - Filed September 27, 2004**

_____

WILLIAM M. BARKER, J., dissenting.

With its decision today, the majority has attempted to fit a round peg into a square hole, and as one would expect, it does not fit.

The sole issue in this case is whether the award of child support of $800 per month to be paid by the father is appropriate. Neither party has appealed the Court of Appeals' custody determination. While not specifically at issue, a brief review of the custody situation is helpful.

The trial court granted primary custody of the parties' three children to the father, who would have custody approximately 230 days per year, and the mother would have custody the remaining 135 days per year. The mother was ordered to make child support payments to the father in the amount of $681.37 per month. The Court of Appeals reversed the trial court's custody determination and adopted the parenting plan that had been proposed by the father. Pursuant to that plan, both parents would share equal custody, alternating custody on a weekly basis.[2]

The parenting plan adopted by the Court of Appeals also provided that the father would pay child support in the amount of $800 per month to the mother. The Court of Appeals found that this

_____

[1] Oral argument was heard in this case on June 2, 2004, in Cookeville, Putnam County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

[2] While neither party challenges the custody arrangement, it is important to note that rarely is completely equal custody appropriate. That having been said, equal custody in this case is less problematic due to the fact that the parents live next door to each other, thus providing more stability for the children than would normally be available in other equal custody situations.

approximately equaled the amount of support the father would owe under the guidelines minus the amount the mother would owe under the guidelines.

The Child Support Guidelines were "designed to apply to situations where children are living primarily with one parent but stay overnight with the other parent at least as often as every other weekend from Friday to Sunday, two weeks in the summer and two weeks during holidays throughout the year." Tenn. Comp. R. & Regs. 12-2-4-.02(6). The guidelines consider "actual physical custody of the child(ren), regardless of whether custody is awarded to one parent and visitation to the other or such an arrangement is ordered to be joint custody or split custody." Id.

While the guidelines do allow for downward deviation of support where custody is divided *more equally* between the parents, Tenn. Comp. R. & Regs. 12-2-4-.02(6), support is still granted to the parent with whom the child(ren) live primarily, Tenn. Comp. R. & Regs. 12-2-4-.03. In other words, it is always presumed in the guidelines that one parent will have more than 50% of the custody of the child(ren). Nowhere in the guidelines is there direction for providing support where custody is divided exactly equally.

The majority of this Court has approved the Court of Appeals' decision to award equal custody to the parents, but also recognizes that under the guidelines, support can only be granted to the "primary residential parent." Tenn. Comp. R. & Regs. 1240-4-.03(1), (2). The "primary residential parent" is, be definition, the parent with whom the child(ren) reside more than 50% of the time. Tenn. Code Ann. § 36-6-402(4) (2003 Supp.). Therefore, the majority is remanding the case to the trial court to name a "primary residential parent" for the sole purpose of awarding child support to one of the parents. This is a contrived result that stands the definition of "primary residential parent" on its proverbial ear.

Because the child support guidelines do not cover this situation in which the parents are sharing equal custody of the children, a better solution would be for the court to look to the law that was in existence prior to the enactment of the guidelines. Cf. In re Swanson, 2 S.W.3d 180, 189 (Tenn. 1999) (holding that where part of the statute relating to the abandonment of a child was found unconstitutional, the definitions that were in effect under the prior law would remain in effect until the legislature amends the statute); Leech v. Am. Booksellers Ass'n Inc., 582 S.W.2d 738, 740 (Tenn. 1979) (holding that prior law is in full force and effect when an act is held unconstitutional).[3]

Prior to the adoption of the child support guidelines, the trial court was vested with wide discretion in matters relating to child custody and support. Campanali v. Campanali, 695 S.W.2d 193 (Tenn. Ct. App. 1985). The obligation to provide support was found to be "determinable only by equitable principles and rules, with due regard to the condition and means of each [parent]."

_____

[3] While these cases deal with statutes that were found to be unconstitutional instead of simply inapplicable, they do stand for the proposition that when a statute cannot be applied to a certain factual situation, the law prior to the enactment of that statute should be utilized. In re Swanson, 2 S.W.3d at 189; Leech, 582 S.W.2d at 740.

Brooks v. Brooks, 61 S.W.2d 654, 654 (Tenn. 1933); Lescher v. Lescher, 679 S.W.2d 463, 465 (Tenn. Ct. App. 1984).

Prior to the guidelines, Tennessee Code Annotated section 36-5-101(e) (1988) set forth the factors to be considered by the trial court when determining the necessity and amount of child support:

(1) The age, physical, mental and emotional condition of each child;
(2) The educational needs of each child and the educational advantages each child had available at the time the circumstances requiring a court order for his or her support arose;
(3) The earning capacity, obligations and needs, and financial resources of each parent;
(4) The contributions, monetary and nonmonetary, of each party to the well-being of the children;
(5) The financial resources of each child;
(6) The standard of living each child has enjoyed during the marriage; and
(7) Such other factors as are necessary to consider the equities for the parents and children.

Tenn. Code Ann. § 36-6-101(e) (1988). From among these factors, the need of the child(ren) and the parent's ability to pay should receive the foremost consideration. Allison v. Allison, 638 S.W.2d 394, 396 (Tenn. Ct. App. 1982).

In approving of the child support of $800 proposed in the parenting plan, the Court of Appeals considered the needs of the children and the resources of each parent, concluding that the $800 would "equalize the resources available to the children, regardless of which parent they are with." The Court also noted that "if we were to subtract the presumptively correct amount of support [the mother] would be obligated to pay under the child support guidelines from the amount [the father] would have to pay under the same guidelines, the result would be very close to the amount [the father] offered." While the guidelines do not apply to this situation, and do not allow for the consideration of the obligee's income and resources, this simply demonstrates that the Court of Appeals was attempting to fashion an equitable child support award for this particular set of circumstances.

Because the child support guidelines do not cover this situation in which custody is divided equally between the parents, the court should revert to pre-guidelines equitable principles in setting child support. The Court of Appeals' decision appears to have done just that, and therefore, I would affirm both the custody and child support determinations made by that Court.

_____
WILLIAM M. BARKER, JUSTICE